IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

IRA DON PARTHEMORE,

    Plaintiff,                    No. CIV S-06-2026 MCE GGH P

    vs.

JAMES TILTON, et al.,

    Defendants.                FINDINGS & RECOMMENDATIONS

                              /

I. <u>Introduction</u>

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants acted with deliberate indifference to his serious medical needs when they failed to remove him from his porter job. Pending before the court is defendants' summary judgment motion filed February 6, 2009. After carefully considering the record, the court recommends that defendants' motion be granted in part and denied in part.

II. <u>Summary Judgment Standards Under Rule 56</u>

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On February 13, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

III. Legal Standard for Eighth Amendment Claim

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842, 114 S. Ct. at 1981.

/////

4

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is actually aware. Id. at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842, 114 S. Ct. at 1981. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42, 114 S. Ct. at 1981. However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-1000. A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the

medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." McGuckin, 974 F.2d at 1061.

IV. Undisputed Facts

Defendant Tilton is the Secretary of the California Department of Corrections and Rehabilitation (CDCR). Defendant Campbell is the Warden at Mule Creek State Prison (MCSP). Defendant Galloway and Milliman are doctors at MCSP.

Prison regulations require all able-bodied inmates to perform some work assignment, even with reasonable accommodation if necessary. "Medically unassigned" is a prison term that describes the work status of an inmate. If an inmate is permanent "medically unassigned," it demonstrates that no inmate job assignment can accommodate an inmate's serious medical condition or physical/cognitive impairment. Medical staff do not determine whether an inmate should be medically unassigned. Rather, it is the job of medical staff to define an inmate's functional limitations or physical capabilities, which will be utilized by custody staff when they assign an inmate to a prison job. It is the responsibility of the custodial staff, such as the Unit Classification Committee (UCC) or Inmate Assignment Office, to classify an inmate as "medically unassigned" when they assign inmates to prison jobs if no available job comports with an inmates's functional limitations.

In 2005 plaintiff transferred to MCSP. On December 14, 2005, plaintiff appeared before the MCSP Unit Classification Committee (UCC). At that time, the UCC placed plaintiff in both the Support Services (Porter Only) Wait List and the Clerk's Wait List.

From February 3, 2006, through October 24, 2006, plaintiff was assigned as a porter. As a porter, plaintiff was required to clean Building 14. His duties included sweeping the floors, mopping, cleaning a shower stall and other similar activities for approximately 1 ½ to 2 hours of a 7 hour shift. After plaintiff completed his two hours of work each day, he would return to his cell for the remaining seven hours of his shift.

Plaintiff was assigned to the position of Jewish Chapel Clerk from December 6, 2006, until February 22, 2008, when the position was dissolved.

V. Analysis

All defendants argue for summary judgment based on qualified immunity. In resolving a claim for qualified immunity the court addresses two questions: (1) whether the facts, when taken in the light most favorable to plaintiff, demonstrate that the officer's actions violated a constitutional right and (2) whether a reasonable officer could have believed that his conduct was lawful, in light of clearly established law and the information the officer possessed. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987). Although the Supreme Court at one time mandated that lower courts consider these two questions in the order just presented, more recently the Supreme Court announced that it is within the lower courts' discretion to address these questions in the order that makes the most sense given the circumstances of the case. Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, --- L.Ed.2d ----, 2009 WL 128768 (January 21, 2009).

### A. Claims for Injunctive Relief

Defendants move for summary judgment as to plaintiff's claim for injunctive relief in the form of a job reassignment from the porter's position to a sedentary position. Defendants argue that this claim is moot because plaintiff is no longer in the porter position. In his opposition, plaintiff agrees that his claim for injunctive relief is moot. Accordingly, defendants should be granted summary judgment as to this claim for relief.

### B. Defendants Tilton and Campbell

Plaintiff's claims against defendant Tilton and Campbell are identical. In the amended complaint, plaintiff alleges that defendant enforced and promulgated a policy that prohibited inmates from being medically unassigned. In his opposition, plaintiff states that he is challenging defendants' enforcement of the policy that all able-bodied inmates must work.

/////

At his deposition, plaintiff testified that he was also basing defendants' liability on their involvement in the inmate grievance process. Plaintiff stated that defendant Tilton is liable based on the denial of his grievance at the Director's Level of Review, although the appeal was denied by N. Grannis, Chief of Inmate Appeals Branch, and not defendant Tilton. See Exhibit 11 attached to amended complaint (Director's Level Appeal containing Grannis signature only). Plaintiff states that he is basing defendant Campbell's liability on the denial of his grievance at the second level of review. The second level grievance was denied by Sylvia Garcia on behalf of defendant Campbell. Id., Exhibit 10 (Second Level Grievance containing signature line for defendant Campbell but signed by Sylvia Garcia).

Regarding defendants' involvement in the grievance process, defendants argue that they should be granted summary judgment because plaintiff is predicating their liability on their supervisory capacity.

The gravamen against these individuals appears not to be simply based on *respondeat superior* as defendants contend, but is their failure to investigate the inmate appeals he filed with regard to responding to the grievances in a manner plaintiff deemed appropriate. Prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Even the non-existence of, or the failure of prison officials to properly implement, an administrative appeals process within the prison system does not raise constitutional concerns. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). See also, Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991). Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D.Ill. 1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"). Specifically, a failure to process a grievance does not state a constitutional violation. Buckley, supra. State regulations give rise to a liberty interest protected

by the Due Process Clause of the federal constitution only if those regulations pertain to "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995).[1]

Defendants sued in their individual capacity must be alleged to have: personally participated in the alleged deprivation of constitutional rights; known of the violations and failed to act to prevent them; or implemented a policy that repudiates constitutional rights and was the moving force behind the alleged violations. Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040 (9th Cir. 1989). "Although a § 1983 claim has been described as 'a species of tort liability,' Imbler v. Pachtman, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L.Ed.2d 128, it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." Martinez v. State of California, 444 U.S. 277, 285, 100 S. Ct. 553, 559 (1980). "Without proximate cause, there is no § 1983 liability." Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir. 1996).

> The search, which was performed in accordance with this constitutionally valid strip search policy, was subsequently ratified by the School Board when Mr. Williams filed a grievance. Therefore, Williams' only grasp at evoking municipal liability under § 1983 is to show that this subsequent ratification is sufficient to establish the necessary causation requirements. Based on the facts, the Board believed Ellington and his colleagues were justified in conducting the search of Williams. There was no history that the policy had been repeatedly or even sporadically misapplied by school board officials in the past. Consequently, the School Board cannot be held liable for the ratification of the search in question, because this single, isolated decision can hardly constitute the "moving force"

---

[1] "[W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones, 445 U.S. 480, 493, 100 S.Ct.1254, 1263-1264 (transfer to mental hospital), and Washington, 494 U.S. 210, 221-222, 110 S.Ct. 1028, 1036-1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, supra.

1 | behind the alleged constitutional deprivation.

2 | Williams v. Ellington, 936 F.2d 881, 884-885 (9th Cir. 1991).

This court is unwilling to adopt a rule that anyone involved in adjudicating grievances after the fact is per se potentially liable under a ratification theory. However, this is not to say that persons involved in adjudicating administrative disputes, or persons to whom complaints are sometimes made, can never be liable under a ratification theory. If, for example, a reviewing official's rejections of administrative grievances can be construed as an automatic whitewash, which may have led other prison officials to have no concern of ever being reprimanded, a ratifying official may be liable for having put a defective policy in place. However, there are no facts whatsoever to suggest the whitewash theory. For these reasons, defendants should be granted summary judgment as to plaintiff's claim that they are liable based on their supervision of N. Grannis and Sylvia Garcia.

Plaintiff also alleges that the policy requiring all able bodied inmates are required to work violated his constitutional rights. This policy, standing alone, is not unconstitutional. Plaintiff's claims challenge the *application* of the policy to him, rather than the policy itself. There is no evidence that defendant Tilton or Campbell had any involvement in the application of the policy to plaintiff. In any event, it does not appear that plaintiff is claiming that he was physically incapable of performing any job. He does not claim, for example, that he could not perform the Jewish Chapel Clerk position to which he was later assigned. Accordingly, defendants Tilton and Campbell should be granted summary judgment as to this claim.

C. Defendant Galloway

In the verified amended complaint, plaintiff alleges that he had an abdominal and a groin hernia. Plaintiff alleges that the duties of the porter job made the hernias painful and caused the abdominal hernia to pop out. Plaintiff alleges that defendant Galloway acted with deliberate indifference by failing to recommend his removal from this job because he was medically incapable of performing it.

Defendants move for summary judgment on grounds that defendant Galloway did not act with deliberate indifference by failing to recommend plaintiff for medically unassigned status.

The parties do not dispute that plaintiff had hernias. Plaintiff also does not seriously dispute that defendant Galloway examined him once on March 14, 2006. It is undisputed that following this examination, on the same date, defendant Galloway issued plaintiff a chrono for a lower bunk on a lower tier and limited duties:

> Due to a medical condition assign inmate on the lower tier. Limit lifting to approximately twenty-five (25) pounds. Limit assignments which require repetitive bending over at the waist, kneeling, crawling, squatting, stooping or pushing with either lower extremity.

See Plaintiff's Opposition, Exhibit 1.

The parties dispute whether plaintiff requested medical unassignment on March 14, 2006. However, this dispute is not material because it is clear that plaintiff did not qualify for medical unassigned status. Because plaintiff was capable of performing a sedentary job, such as the Jewish Chapel Clerk job to which he was later assigned, he was capable of performing an inmate job. Because plaintiff was capable of performing some job, he did not qualify for medically unassigned status. Accordingly, the court does not find that defendant Galloway acted with deliberate indifference by failing to recommend plaintiff for medically unassigned status to the extent he had the authority to do so.

Plaintiff is not only claiming that he should have been found medically unassigned. He is also claiming that defendant Galloway should have found him incapable of performing the porter job and recommended him for a sedentary job. In support of this claim, plaintiff refers to a light duty chrono he received while housed at CSP-Lancaster, a copy of which is attached to his opposition and the amended complaint. This chrono, valid from July 20, 2001, until July 19, 2002, stated:

> This inmate has the following functional limitations on his ability to work: Due to

a medical condition, this inmate should have a sedentary job. Work restrictions include no digging, no bending, and no lifting over 10 pounds.

Plaintiff suggests that defendant Galloway acted with deliberate indifference by issuing a chrono from which custody staff would infer that he could perform the porter job.

The porter job involved cleaning Building 14. In the verified complaint, plaintiff states that the porter duties included lifting heavy buckets of water, mopping, bending to clean showers stalls, etc. Amended Complaint, p. 8. Most general cleaning duties, including those listed by plaintiff, involve the activities prohibited by defendant Galloway's chrono. Because the chrono should have precluded plaintiff from consideration for the porter job, the court finds that defendant Galloway did not act with deliberate indifference in issuing this chrono. By assigning plaintiff to the porter job, custody staff disregarded defendant Galloway's recommended limitations on plaintiff's physical abilities.

The court notes that defendant Galloway does not address why he authorized plaintiff to lift up to 25 pounds while at the same time he severely limited his other, related physical activities. Defendant does not explain how plaintiff's hernia condition had improved since the issuance of the CSP-Lancaster chrono four years earlier authorizing him to lift up to 10 pounds. In his declaration, defendant Galloway observes that plaintiff received similar work restrictions from other doctors after he issued his chrono. Attached to his declaration as attachment 3 is a medical record from September 5, 2008, stating that a light duty chrono would be issued authorizing plaintiff to lift no more than 20 pounds, no prolonged standing, sitting, stooping, crawling or walking. On January 9, 2009, plaintiff received a similar chrono containing the same weight lifting limitation. Galloway declaration, attachment 3.

The court is puzzled by all of the chronos containing strict limitations on plaintiff's physical activities but authorizing him to lift 20 to 25 pounds. However, because of these other limitations on plaintiff's activities, the court finds that no reasonable custody staff would have concluded that plaintiff could perform the porter duties simply because he was

authorized to lift up to 25 pounds. In addition, there is no evidence that plaintiff suffered any injuries as a result of lifting between 10-25 pounds.

Finally, the court observes that in his declaration defendant Galloway states that based on a review of his notes taken from the March 14, 2006, visit, it is his medical opinion that plaintiff was physically able to perform the duties of a porter in March 2006 with the above-described limitations. Galloway declaration, ¶ 8. The court orders this portion of defendant's declaration stricken because according to defendants' own regulations, defendant Galloway is not qualified to determine whether an inmate is capable of performing a job. Rather, custody staff make this determination. In any event, in his declaration defendant Galloway does not describe what porter duties plaintiff could have performed that were not prohibited by the chrono. As discussed above most, if not all, cleaning activities would have been prohibited by the memo. This transparent statement by defendant Galloway borders on the fallacious.

In addition, defendant Galloway also suggests that plaintiff's porter job duties were not discussed on March 14, 2006. This statement appears disingenuous as he issued the light duty chrono at plaintiff's request. Clearly, plaintiff's porter position must have been discussed.

Despite the above, and for the reasons discussed above, the court recommends that defendant Galloway be granted summary judgment.

D. Defendant Milliman

Defendants move for summary judgment on grounds that defendant Milliman did not act with deliberate indifference on the two occasions he saw plaintiff. In his declaration, defendant Milliman states that he first saw plaintiff on January 19, 2006, when he came in as part of the doctor's line. Milliman declaration, ¶ 2. The second evaluation was on February 17, 2006. Id. The medical records from these visits reflect no discussion of medical unassignment. Id., ¶ 3. Rather, a review of the records for both dates show that plaintiff was seen for reasons unrelated to his hernia condition or physical complaints caused by his job. Id. During his

evaluation of plaintiff, defendant Milliman provided plaintiff with medication refills, a referral to the podiatry clinic and a prescription to treat sinusitis. Id.

The court notes that as with defendant Galloway, plaintiff is not only claiming that defendant Milliman failed to recommend him for medically unassigned status. He also claims that defendant Milliman should have issued a light duty chrono, like defendant Galloway. Defendant Milliman should be granted summary judgment as to plaintiff's claim that he failed to recommend for medically unassigned status for the same reasons defendant Galloway is entitled to summary judgment as to this claim. However, for the following reasons, defendant Milliman should not be granted summary judgment as to the claim that he failed to issue a light duty chrono, as did defendant Galloway.

In opposition, plaintiff disputes defendant's claim that they did not discuss his hernia. In his verified amended complaint plaintiff alleges that he told defendant Milliman that he was in constant pain as a result of performing the porter job. Plaintiff claims that defendant Milliman told him that he was faking his condition to get out of a non-paying job mandated by his custody status. Plaintiff claims that defendant Milliman sent him back to his job without examining him.

Plaintiff does not state nor provide evidence demonstrating when the above-described conversation with defendant occurred. The conversation could not have occurred on January 19, 2006, because plaintiff had not yet started his porter job. Accordingly, the court finds that the conversation, if it occurred, happened on February 17, 2006. For the following reasons, the court finds that whether plaintiff told defendant Galloway that he could not perform the porter duties on February 17, 2006, is a disputed material fact.

Plaintiff obtained the chrono from defendant Galloway approximately one month after February 17, 2006. Based on this chrono, custody staff should have reassigned plaintiff from the porter job. While custody staff disregarded this chrono, defendant Milliman cannot escape liability because custody staff would have disregarded his chrono had he issued one as

14

well.  Accordingly, plaintiff is proceeding on a claim for delay in the receipt of medical care by defendant Milliman.  To succeed on this claim, plaintiff must demonstrate that he suffered an injury between the time defendant Milliman allegedly refused to issue the chrono and when defendant Galloway issued his chrono.  <u>McGuckin</u>, 974 F.2d at 1060, citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and <u>Hudson</u>, 112 S. Ct. at 998-1000.  Plaintiff has alleged that performing the porter duties caused him to suffer pain.  Pain constitutes a physical injury.

For the reasons discussed above, the court finds that the facts, when taken in the light most favorable to plaintiff, (barely) demonstrate that defendant Milliman violated plaintiff's Eighth Amendment rights by refusing to issue him a light duty chrono on February 17, 2006.  Accordingly, the court now considers whether a reasonable doctor could have believed that his conduct was lawful, in light of clearly established law and the information the doctor possessed.

Based on the clearly established Eighth Amendment law, the court does not find that a reasonable doctor would have believed that disregarding plaintiff's complaints regarding the pain caused by performing the porter duties was constitutional.  Plaintiff claims that he told defendant that he suffered serious pain as a result of performing the duties.  In addition, it is undisputed that plaintiff had two hernias.  Plaintiff had also been previously given a chrono for a sedentary job position.  No reasonable doctor would have believed that disregarding plaintiff's complaints, based on this record, was lawful.  Accordingly, defendant is not entitled to qualified immunity.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' February 6, 2009, summary judgment motion (# 57) be granted in all respects but for the claims for damages against defendant Milliman.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 05/18/09

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

parth2026.sj